TOLL, PRESIDENT, UNIVERSITY OF MARYLAND *v.*
MORENO ET AL.

No. 77–154.  Argued February 22, 1978—Question certified April 19,
1978—Decided April 30, 1979

PER CURIAM.

This decision supplements *Elkins* v. *Moreno,* 435 U. S. 647
(1978), decided last Term.  Respondents in *Elkins* repre-
sented a class of nonimmigrant alien residents of Maryland

who either held or were financially dependent upon a person who held a "G–4 visa," that is, a nonimmigrant visa granted to "officers, or employees of . . . international organizations, and the members of their immediate families" pursuant to 8 U. S. C. § 1101 (a)(15)(G)(iv). Respondents were not granted "in-state" status for tuition purposes at the University of Maryland because they were conclusively presumed by the University to be nondomiciliaries of the State. Respondents brought suit against the University and its President, alleging that the University's failure to grant respondents in-state status violated various federal laws, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the Supremacy Clause. The District Court held for respondents on the ground that the University's procedures for determining in-state status violated principles established in *Vlandis* v. *Kline,* 412 U. S. 441 (1973), and the Court of Appeals affirmed. *Moreno* v. *University of Maryland,* 420 F. Supp. 541 (Md. 1976), affirmance order, 556 F. 2d 573 (CA4 1977).

In *Elkins* v. *Moreno, supra,* we held that "[b]ecause petitioner makes domicile the 'paramount' policy consideration and because respondents' contention is that they can be domiciled in Maryland but are conclusively presumed to be unable to do so, this case is squarely within *Vlandis* as limited by *Salfi* to those situations in which a State 'purport[s] to be concerned with [domicile, but] at the same time den[ies] to one seeking to meet its test of [domicile] the opportunity to show factors clearly bearing on that issue.' *Weinberger* v. *Salfi,* 422 U. S. [749,] 771 [1975]." 435 U. S., at 660. Since the applicability of *Vlandis* depended on whether respondents could in fact become Maryland domiciliaries, we certified, pursuant to Subtit. 6 of Tit. 12 of the Md. Cts. & Jud. Proc. Code (1974), the following question to the Maryland Court of Appeals:

"Are persons residing in Maryland who hold or are named in a visa under 8 U. S. C. § 1101 (a)(15)(G)(iv) (1976

ed.), or who are financially dependent upon a person holding or named in such a visa, incapable as a matter of state law of becoming domiciliaries of Maryland?" *Elkins* v. *Moreno, supra,* at 668–669.

On June 23, 1978, approximately two months after the decision in *Elkins,*[*] the Board of Regents of the University of Maryland unanimously adopted "A Resolution Clarifying the Purposes, Meaning, and Application of the Policy of the University of Maryland for Determination of In-State Status for Admission, Tuition, and Charge-Differential Purposes, Insofar as It Denies In-State Status to Nonimmigrant Aliens." In this resolution, the Board of Regents stated, *inter alia:*

> *"Purposes and Interests of In-State Policy.* The Board of Regents finds and declares that the policy approved on September 21, 1973, insofar as it denies in-state status to nonimmigrant aliens, serves a number of substantial purposes and interests, whether or not it conforms to the generally or otherwise applicable definition of domicile under the Maryland common law, including but not limited to:
>
> "(a) limiting the University's expenditures by granting a higher subsidy toward the expenses of providing educational services to that class of persons who, as a class, are more likely to have a close affinity to the State and to contribute more to its economic well-being;
>
> "(b) achieving equalization between the affected classes of the expenses of providing educational services;
>
> "(c) efficiently administering the University's in-state determination and appeals process; and
>
> "(d) preventing disparate treatment among categories of nonimmigrants with respect to admissions, tuition, and charge-differentials.

---

[*]The order certifying the question to the Maryland Court of Appeals was dated April 25, 1978.

"*Reaffirmation of In-State Policy.* Regardless of whether or not the policy approved by the Board of Regents on September 21, 1973, conforms with the generally or otherwise applicable definition of domicile under the Maryland common law, the Board of Regents reaffirms that policy because it intends and deems it to serve a number of substantial purposes and interests, including but not limited to those set forth above."

On February 21, 1979, the Maryland Court of Appeals unanimously answered our certified question in the negative, stating that "[s]ince nothing in the general Maryland law of domicile renders G–4 visa holders, or their dependents, incapable of becoming domiciled in this State, the answer to the certified question is 'No.'" *Toll* v. *Moreno,* 284 Md. 425, 444, 397 A. 2d 1009, 1019. The Maryland Court of Appeals also declined to consider the implications of the Board of Regents' clarifying resolution, because, although the resolution represented a change of the University's position, the implications of that change were beyond the scope of the certified question. *Id.,* at 436–437, 397 A. 2d, at 1014–1015.

The Attorney General of Maryland now requests that this case "be restored to the Supreme Court's active docket for further briefing and argument . . . ." We must deny this request because the Board of Regents' clarifying resolution has fundamentally altered the posture of the case. Our decision in *Elkins* rests on the premise that "the University apparently has no interest in continuing to deny in-state status to G–4 aliens as a class if they can become Maryland domiciliaries since it has indicated both here and in the District Court that it would redraft its policy 'to accommodate' G–4 aliens were the Maryland courts to hold that G–4 aliens can" acquire such domicile. 435 U. S., at 661. After the clarifying resolution, this premise no longer appears to be true. And if domicile is not the "paramount" policy consideration of the University, this case is no longer "squarely within *Vlandis* as limited by

*Salfi* . . . ." *Id.,* at 660. The clarifying resolution thus raises new issues of constitutional law which should be addressed in the first instance by the District Court. We therefore vacate the judgment of the Court of Appeals and remand to the District Court for further consideration in light of our opinion and judgment in *Elkins,* the opinion and judgment of the Maryland Court of Appeals in *Toll,* and the Board of Regents' clarifying resolution of June 23, 1978.

*So ordered.*