Cynthia A. BICKLEY

v.

UNIVERSITY OF MARYLAND, State of Maryland; Board of Regents, Chairman Peter F. O'Malley; President Toll; Art Department Chairperson, David Driskell.

Civ. A. No. M–81–140.

United States District Court, D. Maryland.

Nov. 16, 1981.

Oliver Denier Long, Bethesda, Md. for plaintiff.

Stephen H. Sachs, Atty. Gen. of Maryland, and Mary Elizabeth Kurz, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On January 26, 1981, Cynthia Bickley, a former faculty member at the University of Maryland, filed a *pro se* complaint alleging that she was the object of various discriminatory employment practices while employed at the University.[1]  Named as defendants are the University, the Chairman of the Board of Regents, the President of the University, and the Chairman of the Art Department.  All of the individual defendants are sued in their official capacities.  After the defendants moved to dismiss her complaint,[2] an appearance was entered of counsel to represent the plaintiff.[3]  The plaintiff's counsel thereafter filed an opposition to the defendants' dismissal motion.[4]  The court heard argument from counsel on November 6, 1981 and the matters raised by the defendants' motion are ready for decision.

### I.  Overview

The plaintiff was employed by the University from September 1, 1966, to June 15, 1978.  From September 1, 1971, until her termination, she held the position of an Assistant Professor in the Art Department at the University's College Park campus.

On July 21, 1976, the plaintiff filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), alleging that the University discriminated against her and other female, assistant professors by paying them salaries lower than those paid to male professors doing comparable work.[5]  In December of 1976, the plaintiff was informed that her contract would not be renewed upon its expiration on June 15, 1978.[6]  On November 24, 1978, the plaintiff filed an amended charge with the EEOC, alleging retaliation in connection with the University's decision not to renew her contract.[7]  The plaintiff received her right-to-sue letter from the EEOC on October 29, 1980.[8]

### II.  Discussion

#### A.  Title VII

The defendants have challenged the plaintiff's right to pursue her retaliatory discharge claim, 42 U.S.C. § 2000e–3(a), on the ground that she did not file a retaliation charge with the EEOC within 180 days of the date on which her claim accrued.  *Id.* § 2000e–5(e).  The defendants' position is correct.

■ The timely filing of an administrative charge is generally a prerequisite to the maintenance of a private Title VII action.  *See, e. g., United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571 (1977); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).  Such a procedural requirement, however, does not implicate the court's subject matter jurisdiction.  *Citicorp Person-To-Person Financial Corp. v. Brazell*, 658 F.2d 232, 234 (4th Cir. 1981).  Nevertheless, absent cir-

---

1.  Paper No. 1.

2.  Paper No. 3.

3.  Paper No. 8.

4.  Paper No. 10.

5.  Paper No. 3, Ex. A.  The complaint is not styled as a class action, and no class certification motion has been filed.

6.  Paper No. 3, Ex. B.

7.  Paper No. 3, Ex. B.

8.  Paper No. 3, Ex. D.

cumstances justifying the application of the so-called "equitable tolling" rule, a plaintiff's failure to comply with the relevant time limitations serves as a bar to the maintenance of a private Title VII suit. *E. g., Citicorp Person-To-Person Financial Corp. v. Brazell*, 658 F.2d at 234–35; *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 587–95 (5th Cir. 1981) (en banc) and cases cited therein. The plaintiff has not urged the application of the equitable tolling rule, and the court's review of the record reveals no circumstances justifying its application.

The plaintiff's retaliatory termination claim accrued when the University's decision not to renew her contract was communicated to her in December of 1976, not when the contract ultimately expired on June 15, 1978. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). *See Chardon v. Fernandez*, —— U.S. ——, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Since the plaintiff did not file her retaliatory termination charge until November 24, 1978, more than 180 days after it accrued, the defendants assert that the court may not entertain her retaliation claim.

Recently, in *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981), a panel of the Fifth Circuit held as follows:

> "It is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."

654 F.2d at 414.

In that case, the plaintiff had filed an administrative charge on July 9, 1975, alleging that the defendant discriminated against him, because of national origin and religion, in terms of job assignments and pay rates. A right-to-sue letter was issued by the Equal Employment Opportunity Commission (EEOC) in February of 1976, and the plaintiff filed suit on March 23, 1979. After the institution of the lawsuit, the plaintiff was informed that his contract would not be renewed the following year. Although no administrative charge was filed by the plaintiff regarding his termination, this issue was litigated at trial. The court of appeals, *sua sponte*, raised the jurisdictional issue. 654 F.2d at 412–13.

The court in *Gupta* offered several reasons in support of its decision to carve out an exception to the statutory requirement of administrative exhaustion. From a precedential perspective, the court indicated that ancillary jurisdiction in the Title VII context had been applied in one of its prior cases, *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969), and by several District Courts. *See, e. g., Pouncey v. Prudential Insurance Co.*, 499 F.Supp. 427 (S.D.Tex.1980); *National Organization for Women v. Sperry Rand Corp.*, 457 F.Supp. 1338 (D.Conn.1978); *Held v. Missouri Pacific R. R. Co.*, 373 F.Supp. 996 (S.D.Tex. 1974).[9]

The court also found "strong practical reasons and policy justifications for [its] conclusion." 654 F.2d at 414. According to the Fifth Circuit panel, since retaliation claims generally arise after the filing of an administrative charge, requiring the plaintiff to file a second administrative charge "would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." 654 F.2d at 414. In addition, the attainment of Title VII's goals would be hindered without the ancillary exception because the EEOC relies largely on private suits to enforce the Act. Finally, the court indicated that the availability of ancillary jurisdiction over retaliation claims would deter employers "from attempting to discourage employees from exercising their rights under Title VII." 654 F.2d at 414.

Having reviewed the structure of Title VII's exhaustion provisions, as well as judicial pronouncements regarding the policies underlying administrative exhaustion, this court must disagree with the decision of the Fifth Circuit panel in *Gupta*.

---

**9.** All of the District Court cases rely, at least indirectly, on *Pettway*.

As an initial matter, it appears that *Gupta*'s reliance on *Pettway*, as sanctioning the use of ancillary jurisdiction to support the assertion in a private lawsuit of claims neither presented to nor investigated by the EEOC, is misplaced. The specific issue decided in *Pettway* was whether the District Court, after dismissing the plaintiff's Title VII claim for lack of jurisdiction, had jurisdiction to enjoin the defendant from terminating the plaintiff during the pendency of the appeal. Writing for the panel, Chief Judge Brown, held that pursuant to Rule 62(c), Fed.R.Civ.P., the District Court had the authority to grant such injunctive relief as ancillary to the case then pending on appeal, in order to preserve the status quo and prevent the case from becoming moot. 411 F.2d at 1002–03. It is plain, therefore, that neither the holding nor the reasoning of *Pettway* is authority for the rule announced in *Gupta*.

■ There are additional reasons, however, why this court declines to follow *Gupta*. First, the retaliatory discharge exception carved out by the Fifth Circuit panel has no basis in the language of Title VII. Although there are important legal and conceptual differences between the acts made unlawful by section 703(a), 42 U.S.C. § 2000e–2(a), and section 704(a), *id.* § 2000e–3(a), Title VII does not distinguish between them for the purpose of administrative exhaustion. Section 706, 42 U.S.C. § 2000e–5.

Second, the course charted by the Fifth Circuit panel is at odds with the settled rule that "the scope of a Title VII suit is limited to the claims asserted in the administrative charge of discrimination and such other claims uncovered during a reasonable investigation of that charge, provided that these other claims were actually investigated by the administrative agency." *Mobley v. Acme Markets, Inc.*, 473 F.Supp. 851, 853 (D.Md.1979) (Harvey, J.), *citing Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184, 1190–93 (D.Md.1977). *Accord, Nance v. Union Carbide Corp.*, 540 F.2d 718, 727 (4th Cir. 1976), *vacated on other grounds*, 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977);

*King v. Seaboard Coastline Ry. Co.*, 538 F.2d 581, 583 (4th Cir. 1976).

The policy reasons underlying this rule were well stated by Judge Blair in *Hubbard.*

"When faced with the question of the proper scope of a Title VII complaint, a court must balance two competing statutory policies. The first is that Title VII is a broad remedial statute designed to protect those who are the least able to protect themselves. An individual who files a discrimination charge seldom has the assistance of counsel and is not expected to articulate the entire range of allegedly discriminatory practices of which he feels he is a victim. Courts, therefore, have given a liberal interpretation to allegations in discrimination charges in order to effectuate the underlying purposes of Title VII.

\* \* \* \* \* \*

"The second policy is that Title VII plaintiffs should not have an unrestrained ability to litigate allegations of discrimination which are neither contained in the EEOC charge nor investigated by the EEOC, thereby frustrating the statutory scheme of informal persuasion and voluntary compliance. Without limitations, the importance of the EEOC conciliatory procedures would be diminished and employers would be denied the opportunity to resolve disputes by EEOC settlement rather than by litigation.

\* \* \* \* \* \*

"Title VII's overall framework for eliminating discrimination in employment emphasizes voluntary compliance through informal persuasion at the administrative level with litigation being the choice of last resort for dispute resolution. The importance of conciliation, which is central to Title VII's effective administration, is exemplified by the mandatory conciliation which must precede a suit brought by the EEOC. The court, of course, recognizes that conciliation is not a prerequisite to the institution of a private Title VII suit. Nevertheless, concil-

iation, the keystone of Title VII, flows from the EEOC's investigation of the discrimination charge and its letter of determination. The Commission's processing of a discrimination charge is not done in a vacuum, rather it is necessarily in contemplation of Title VII's administrative and judicial scheme. The Commission's ultimate investigation, as reflected by the letter of determination, represents the agency's judgment on the scope of a reasonable investigation of the original charge."

436 F.Supp. at 1188–90 (citations and footnotes omitted).

▉▉▉ That the EEOC may rely on the institution of private suits to achieve Title VII's goals is alone an insufficient reason to relieve a claimant from his or her statutory responsibilities. *Cf. Mohasco Corp. v. Silver*, 447 U.S. 807, 815–17, 100 S.Ct. 2486, 2491–92, 65 L.Ed.2d 532 (1980) (timely filing of charge with state agency in a deferral state); *Movement for Opportunity & Equality v. General Motors Corp.*, 622 F.2d 1235, 1240–41 (7th Cir. 1980) (absent special circumstances, claimant must seek and act on right-to-sue letter); *Stebbins v. Continental Insurance Companies*, 442 F.2d 843, 845–46 (D.C.Cir.1971) (same). Moreover, the filing of an administrative charge, under the circumstances presented in this case, is not a needless procedural technicality. The plaintiff's 1976 charge alleged sex discrimination in the nature of differing pay rates between similarly qualified male and female assistant professors. Section 703(a), 42 U.S.C. § 2000e–2(a). Although the plaintiff was notified of her termination in December of 1976, she waited until November of 1978 to file her retaliation charge. Section 704(a), 42 U.S.C. § 2000e–3(a). It is apparent, therefore, that had the plaintiff timely filed her retaliation charge, rather than waiting approximately two years, there would have been an opportunity for administrative conciliation while the alleged discrimination was still fresh. Finally, given the ease of filing an administrative charge, it is at best speculative that employers would be deterred from violating the Act if retaliation claims were held to be ancillary to previously filed, but conceptually and factually distinct, administrative charges.[10]

The defendants next contend that the plaintiff's unequal pay claim, pursuant to 42 U.S.C. § 2000e–2(a), should be dismissed because the EEOC did not notify them of the plaintiff's charge within the ten-day period required by 42 U.S.C. § 2000e–5(e). The plaintiff's charge was filed on July 21, 1976, and the defendants were not notified until September 8, 1976.[11] According to the defendants, the service of a notice within the ten-day period is a jurisdictional prerequisite to the maintenance of a private Title VII suit.[12]

---

**10.** The plaintiff's reliance on *Armstrong v. Index Journal Co.*, 647 F.2d 441 (4th Cir. 1981), is misplaced. Although the court construed broadly the type of conduct falling within the opposition clause of § 704(a), 647 F.2d at 448–49, the timeliness of the plaintiff's retaliation charge was not at issue. 647 F.2d at 444.

**11.** Paper No. 3, Ex. C.

**12.** The defendants have not contended that the plaintiff's Title VII claims should be dismissed due to the absence in the complaint of a reference to the deferral of her charge to the Maryland Commission on Human Relations (MCHR). 42 U.S.C. § 2000e–5(c). *See Mohasco v. Silver*, 447 U.S. 807, 815–17, 100 S.Ct. 2486, 2491–92, 65 L.Ed.2d 532 (1980); *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64–65, 100 S.Ct. 2024, 2031–32, 64 L.Ed.2d 723 (1980). The court notes, however, that there is no requirement that the plaintiff herself have filed such a charge with the MCHR. *See Love v. Pullman*, 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972); *Hall v. Board of County Commissioners*, 509 F.Supp. 841, 844–46 (D.Md.1981). There is no question as to the timeliness of the plaintiff's 1976 charge. *See, e. g., Wiltshire v. Standard Oil Co.*, 652 F.2d 837, 839–40 (9th Cir. 1981); *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1329–31 (4th Cir. 1976). Consequently, there would need to be a determination of the equities should it appear that the EEOC did not defer the plaintiff's 1976 charge to the MCHR before assuming jurisdiction. *Citicorp Person-To-Person Corp. v. Brazell*, 658 F.2d at 234. *Compare Cannon v. Delaware*, 523 F.Supp. 341 (D.Del.1981); *Mann v. Board of Education*, 514 F.Supp. 1388, 1390–91 (N.D.Ill.1981) (stay of federal action to permit completion of administrative proceedings).

In *Russell v. American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976), Judge Butzner for the court held that the EEOC's failure to notify one of the named respondents, and to attempt conciliation with that respondent, did not deprive the District Court of jurisdiction over the individual plaintiff's Title VII claim. Consequently, the EEOC's twenty-nine day delay in notifying the defendants of the plaintiff's 1976 charge is not a basis for the dismissal of any claim arising out of that charge. *See, e. g., Watson v. Gulf & Western Industries*, 650 F.2d 990, 992–94 (9th Cir. 1981); *Shehadeh v. Chesapeake & Potomac Telephone Co.*, 595 F.2d 711, 727–28 (D.C.Cir.1978); *Smith v. American Presidential Lines, Ltd.*, 571 F.2d 102, 107 n. 8 (2d Cir. 1978); *Lewis v. Philip Morris, Inc.*, 419 F.Supp. 345, 350 (E.D.Va.1976); *Healan v. Eastern Airlines, Inc.*, 8 FEP Cas. 917, 922 (N.D.Ga.1973). *See also EEOC v. Radiator Specialty Co.*, 610 F.2d 178, 182–83 (4th Cir. 1979).

The defendants next contend that the court cannot consider, in connection with the plaintiff's claim under 42 U.S.C. § 2000e–2(a), any period prior to January 21, 1976, the 180th day before the filing of the plaintiff's administrative charge. This contention is plainly without merit.

■ Sex discrimination, in the nature of unequal pay, is a continuing violation of Title VII, commencing with the first pay period and ending when the plaintiff was terminated. *Jenkins v. Home Insurance Co.*, 635 F.2d 310, 312 (4th Cir. 1980). Consequently, the court may consider evidence of discriminatory pay rates dating back to the plaintiff's appointment to an assistant professorship and, if appropriate, award back pay dating back two years from the July 21, 1976 charge. 42 U.S.C. § 2000e–5(g). *See Williams v. Norfolk & Western Ry. Co.*, 530 F.2d 539, 541 (4th Cir. 1975). Of course, any back pay award would be limited by the plaintiff's termination date. *See generally EEOC v. Ford Motor Co.*, 645 F.2d 183, 186–96 (4th Cir. 1981) (discussion of factors to consider when shaping relief).

## B. The Equal Pay Act

■ The defendants have advanced two arguments in connection with the plaintiff's claims under the Equal Pay provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The defendants first contend that the Eleventh Amendment precludes a private party from suing in federal court to enforce section 6(d)(1) of the Equal Pay Act. 29 U.S.C. § 206(d)(1). The court disagrees.

Unlike the Commerce Clause provisions of the FLSA found to violate the Tenth Amendment in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), section 6(d)(1) of the Equal Pay Act may be viewed as an exercise of congressional power under section 5 of the Fourteenth Amendment. *Usery v. Charleston County School District*, 558 F.2d 1169, 1170–71 (4th Cir. 1977) (rejecting 10th Amendment challenge to the Equal Pay Act). *See Arritt v. Grisell*, 567 F.2d 1267, 1270 (4th Cir. 1977) (rejecting 10th Amendment challenge to the ADEA). Moreover, section 16(b) of the Equal Pay Act, 29 U.S.C. § 216(b), the enforcement provision, was amended in 1974 to provide that suits to enforce section 6(d)(1) could be maintained "against any employer (*including a public agency*) in any Federal or State court of competent jurisdiction by one or more employees for or in behalf of himself or themselves and other employees similarly situated." Act of April 8, 1974, Pub.L.No. 93–259, § 6(d)(1), 88 Stat. 61. (emphasis supplied). This amendment was enacted for the express purpose of overcoming the Supreme Court's objection, in *Employees v. Missouri Public Health Department*, 411 U.S. 279, 281–85, 93 S.Ct. 1614, 1616–18, 36 L.Ed.2d 251 (1973), that the 1966 amendments to the FLSA, while extending statutory coverage to state employees, disclosed no congressional purpose to divest the states of their Eleventh Amendment immunity. H.R.Rep.No. 913, 93d Cong.2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 2811, 2853. This clearly expressed congressional purpose is sufficient under

the Supreme Court's construction of section 5 of the Fourteenth Amendment as set out in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 453–56, 96 S.Ct. 2666, 2670–71, 49 L.Ed.2d 614 (1976), to divest the states of their Eleventh Amendment immunity. The court, therefore, concludes that a private individual may sue a State in federal court to enforce section 6(d)(1) of the Equal Pay Act. *Accord, Friedman v. Weiner,* 515 F.Supp. 563, 567–68 (D.Colo.1981); *Burkey v. Marshall County Board of Education,* 513 F.Supp. 1084, 1096 (N.D.W.Va.1981); *Jacobs v. College of William & Mary,* 495 F.Supp. 183, 186 & n. 4 (E.D.Va.1980).

■ The defendants' second contention, regarding the period of limitations applicable to the plaintiff's Equal Pay Act claim, has more merit. The plaintiff has alleged a "willful" violation of section 6(d)(1), entitling her to a three-year period of limitations. 29 U.S.C. § 255(a). *See, e. g., Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 458–62 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1977); *Hodgin v. Jefferson,* 447 F.Supp. 804, 809 (D.Md.1978). Since the plaintiff has alleged a continuing violation of the Equal Pay Act, and this suit was commenced within three years of her termination from employment, her Equal Pay Act claims are not time barred. *See, e. g., Jenkins v. Homes Insurance Co.,* 635 F.2d at 312; *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050–51 (5th Cir. 1973). Accordingly, if the plaintiff is able to prove a "willful" violation, she could be awarded back pay to January 26, 1978, which is three years prior to the filing of her complaint. *See, e. g., Laffey v. Northwest Airlines, Inc.,* 567 F.2d at 458; *Burkey v. Marshall County Board of Education,* 513 F.Supp. at 1098. *Cf. Strong v. Demopolis City Board of Education,* 515 F.Supp. 730, 735 (S.D.Ala.1981) (applying Title VII continuing violation theory in Equal Pay Act case to award back pay for period greater than applicable limitations period).

*C. Section 1983*

The defendants have challenged the plaintiff's claims founded upon section 1983 on the following grounds: (1) the defendants are not "persons" within the meaning of section 1983; (2) the relief sought by the plaintiff is barred by the Eleventh Amendment; and (3) the plaintiff's termination claim is barred by the statute of limitations.

The court need not reach the questions presented by the defendants' first and third contentions.[13] Assuming, without deciding, that the Supreme Court's decisions in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), do not foreclose a finding that the University is a "person" who can be sued under section 1983, *see, e. g., Gay Student Services v. Texas A & M University,* 612 F.2d 160, 163–64 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *Marrapese v. Rhode Island,* 500 F.Supp. 1207, 1209–12 (D.R.I.1980), the relief sought by the plaintiff is precluded by the Eleventh Amendment.

This court has already once determined that the University of Maryland is "an arm of the State partaking of the State's Eleventh Amendment immunity." *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). *See Moreno v. University of Maryland,* 420 F.Supp. 541, 549–50 and n. 7 (D.Md.1976), *aff'd sub nom. Moreno v. Elkins,* 556 F.2d 573 (4th Cir. 1977), *vacated on other grounds sub nom. Toll v. Moreno,* 441 U.S. 458, 99 S.Ct. 2044, 60 L.Ed.2d 354 (1979), *on remand,* 480 F.Supp. 1116 (D.Md. 1979), and 489 F.Supp. 658 (D.Md.1980), *aff'd sub nom. Moreno v. University of Maryland,* 645 F.2d 217 (4th Cir. 1981).

■ Although the legal analysis underlying the court's holding in *Moreno* was

---

13. It is apparent, however, that the plaintiff's termination claim accrued in December of 1976. *Delaware State College v. Ricks,* 449 U.S. at 257–59, 101 S.Ct. at 504. Since this suit was not filed within three years of her awareness of the University's decision, her termination claim is clearly time barred. *See, e. g., Hall v. Board of County Commissioners,* 509 F.Supp. at 847–48.

premised upon the Supreme Court's discussion of section 1983 in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the factual basis of the court's holding remains unaltered.[14] Accordingly, as presently constituted, the University of Maryland is an arm of the State for Eleventh Amendment purposes.[15] Since the relief sought by the plaintiff is retrospective, and would be satisfied out of the State treasury, the Eleventh Amendment poses an absolute bar for the State has not consented to be sued.[16] *See, e. g., Quern v. Jordan*, 440 U.S. at 337–41, 99 S.Ct. at 1143–45; *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978) (per curiam); *Edelman v. Jordan*, 415 U.S. 651, 663–65, 94 S.Ct. 1347, 1355–57, 39 L.Ed.2d 662 (1974).

For the reasons set out above, it is this 16th day of November, 1981, by the United States District Court for the District of Maryland, *ORDERED* :

1. The defendants' motion to dismiss the plaintiff's Title VII claims founded upon the 1978 retaliatory termination charge is GRANTED.

2. The defendants' motion to dismiss the plaintiff's Title VII claims is, in all other respects, DENIED.

3. The defendants' motion to dismiss the plaintiff's claims founded upon the Equal Pay Act is DENIED.

4. The defendants' motion to dismiss the plaintiff's claims founded upon section 1983 is GRANTED.

---

**14.** The Fourth Circuit has reserved the question of whether in light of recent Supreme Court decisions, the University of Maryland is a "person" under section 1983. *Moreno v. University of Maryland*, 645 F.2d at 219 n. 1.

**15.** *See, e. g., Md. Educ. Code Ann.* § 13–101 (1978) (University established as a corporate body and agency of the State); *id.* § 13–102(c)(3) & (d) (State Secretary of Agriculture is ex officio member of Board of Regents; all other members appointed by the Governor with the advice and consent of the Senate); *id.* § 13–104 (powers and duties of Board of Regents); *id.* § 13–105 (fiscal matters, including annual report to the General Assembly and University income under the authority of the State Treasurer).

---

**16.** The waiver of sovereign immunity set out in *Md. Educ. Code Ann.* § 13–1A–07 (1981 Cum. Supp.) is of no aid to the plaintiff for two reasons. First, that section did not become effective until July 1, 1980, and there is no indication that the General Assembly intended it to have retrospective effect. *See, e. g., Maryland Commission on Human Relations v. Amecom Division of Litton Systems, Inc.*, 278 Md. 120, 123–24, 360 A.2d 1 (1976); *Kelch v. Keehn*, 183 Md. 140, 143–44, 36 A.2d 544 (1944). Second, the waiver set out in § 13–1A–07 extends only to employee grievance and disciplinary proceedings brought pursuant to *Md. Educ. Code Ann.* §§ 13–1A–03 *et seq.* (1981 Cum.Supp.), not federal litigation generally. Preamble, ch. 726, 1980 *Md.Laws* 2519.