Barbara Jean **DAWKINS** and Jacqueline Denise Dawkins, a minor by her mother and next friend, Barbara Jean Dawkins, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

Clifton M. **CRAIG**, Individually and as North Carolina Commissioner of Social Services et al., Defendants-Appellants.

No. 72–2460.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1973.

Decided Sept. 12, 1973.

Robert S. Weathers, Asst. Atty. Gen., North Carolina (Robert Morgan, Atty.

Gen., North Carolina, on brief), for defendants-appellants.

Donald S. Gillespie, Jr., Charlotte, N. C., for plaintiffs-appellees.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

The parties to this appeal agree that the sole issue is whether the District Court properly ordered the State of North Carolina to make retroactive payments in the program called Aid to Families with Dependent Children. It is contended by appellant that such order is in contravention of the Eleventh Amendment to the United States Constitution.

Plaintiff Dawkins is a resident of Mecklenburg County, North Carolina and is the mother of Jacqueline Dawkins, who was 14 years of age at the time the complaint was filed and who resides with her mother. The defendants are the state personnel and the state administrative agencies responsible for administration of the North Carolina public assistance programs which relate to this appeal.

During July, 1970, plaintiff applied to the Mecklenburg County Department of Social Services for Aid to Families with Dependent Children (AFDC) benefits on behalf of herself and her daughter Jacqueline Dawkins. On August 12, 1970, she received a notice from the county director which said that her "application for public assistance was not approved for payment because of refusal to file a warrent [sic] against the deserting parent." She noted an administrative appeal from the action taken by the county director, and her appeal was heard on August 25, 1970 before a hearing examiner representing appellant State Commissioner. On September 25, 1970, Dawkins received a "Notice of Final Decision" from the State Commissioner dated September 21, 1970, which stated that the county director's decision was correct because it was in accordance with § 2210 of the North Carolina Financial Services Manual which provides that "if it is established that a parent (or parents) has deserted or abandoned his children, the applicant or recipient payee should agree to institute non-support action against the deserting parent (or parents) where the applicant or recipient can identify the parent (or parents)."

On October 13, 1970, Dawkins filed a civil action in the District Court. The complaint alleges that appellants have construed the above regulation so that the filing of a non-support action against a deserting parent is a prerequisite to eligibility for AFDC benefits. The complaint alleges that the regulation is unconstitutional and prays not only for declaratory and injunctive relief but also for payment of sums allegedly wrongfully withheld.

On May 8, 1972, the parties filed a stipulation which indicated that the regulation in question had been revised and amended, to the satisfaction of the plaintiffs, so that there no longer existed the necessity for any prospective relief. The stipulation further recited that the only issues left for determination were the propriety and extent of class action relief and the propriety and extent of retroactive payments to plaintiffs. The District Court ordered that the case was properly maintainable as a class action and defined the class. The defendants have not challenged such action. We are thus faced with the issue of whether the District Court's order that payments be restored retroactively contravenes the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides as follows:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Eleventh Amendment was declared to have been ratified on January 8, 1798.[A1] The amendment was proposed to the several states on March 4, 1794 as a consequence of the Supreme Court's decision in Chisholm v. Georgia, 2 Dall. 419, 1 L.Ed. 440 (1793). In *Chisholm*, the Supreme Court held that a State could be sued by a citizen of another State in assumpsit. The amendment on its face does not speak to the situation where, as here, a State is sued by one of its own citizens. However, the Supreme Court has ruled that an unconsenting State is immune from suits brought in federal courts by its own citizens, as well as by citizens of another State.[1]

Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare, 411 U.S. 279 at 280, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1899); Duhne v. New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); see Great Northern Ins. Co. v. Read, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). In *Employees*, etc., supra, 411 U.S. at 286, 93 S.Ct. 1614, the court made it clear that, where the suit is by a citizen against his own State, the constitutional constraint imposed by the Eleventh Amendment upon the judicial power of the United States is invoked. See also

**A1.** Three-fourths of the States had ratified the amendment by 1795.

**1.** As noted by the Supreme Court in *Hans*, the furor created by the *Chisholm* decision did not turn upon any distinctions of whether a State could be sued by its own citizens or citizens of another State but was caused by judicial recognition that the State could be sued at all. The Federalist, No. 81, (Hamilton) and the Chronicles of the Virginia Convention, 3 Elliot's Debates, reveal that there was indeed apprehension that the language in Article III, "the judicial power shall extend to all . . . controversies between a State and citizens of another State, . . .," might be construed to allow a State to be sued in the federal courts by an individual. Hamilton, Mason and Patrick Henry all voiced this concern. These objections were answered by Madison and Marshall, who stated that the language was intended to allow a State to sue an individual in federal courts. Marshall's comment is particularly apt: "I hope that no gentleman will think that a State will be called at the bar of the Federal court . . . ." Against this background, it is not difficult to understand the unrest created by the *Chisholm* decision which did precisely what Marshall and Madison assured would not happen. *Chisholm* itself involved a suit against a State by a citizen of another State. Since the Eleventh Amendment was directed at correcting the *Chisholm* decision, it is not surprising to find the language there expressed in terms of the facts in the *Chisholm* case, that is, suits involving citizens of another State. It is interesting to note that the Eleventh Amendment did not simply bar such suits; its language was pointedly directed at the courts. The language of the amendment is that the judicial

power of the United States "shall not be *construed* to extend. . . . " [Emphasis added]. Thus, the Eleventh Amendment, a result of the *Chisholm* case, was specifically enacted to bar any construction of Article III which would obtain the result reached in *Chisholm*. There was no need to word the Eleventh Amendment to bar suits other than those brought by a citizen of another State because, under no circumstances, could Article III have been construed to extend the judicial power to a suit brought by a citizen of the State sued. As the Supreme Court noted in *Duncan*, Article III was not intended to allow suits which were unknown and forbidden at common law. Nevertheless, it has been argued on occasion that because the Eleventh Amendment only specifically barred suits brought by citizens of another State, suits brought by citizens of the State sued were not barred. This argument ignores the historical aspects of the whole matter and was rejected by the Supreme Court. As stated by Chief Justice White in Duhne v. New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920): ". . . it has been long since settled that the whole sum of the judicial power granted by the constitution of the United States does not embrace the authority to entertain a suit brought by a citizen against his own state without its consent." *Duhne* at 313, 40 S.Ct. at 154. It is clear from *Duhne* that whether the question be viewed as the extent of the grant of power under Article III, or the extent of the bar imposed by the Eleventh Amendment, the answer is the same—suits brought by a citizen of the State sued are barred in the same manner as are suits against a State by a citizen of another State.

*Hans,* supra, 134 U.S., at 15, 10 S.Ct. 504, and Ex parte Young, 209 U.S. 123, 150, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The amendment covers not only suits brought against a State by name but those also against its officers, agents and representatives, where the State, though not named as such, is nevertheless the only real party against which, in fact, relief is asked, and against which the judgment operates. In re Ayers, 123 U.S. 443, 505–506, 8 S.Ct. 164, 31 L.Ed. 216 (1887); Ex parte Young, 209 U.S. 123, 150, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Cf. *Employees,* etc., supra. Of course, it has long been the law that the Eleventh Amendment is no bar to a suit brought to direct a State officer to bring his conduct into conformity with federal law. *In re Ayers,* supra; *Ex parte Young,* supra; *Employees,* etc., supra, 411 U.S. at 293, n. 9, 93 S.Ct. 1614. Thus, while the Eleventh Amendment may have been no bar to the jurisdiction of the court below insofar as the suit sought to require North Carolina officials to act in accordance with the constitution, the order to make retroactive payments is a different matter. Such relief looks directly to the payment of public funds out of the State treasury. See N.C. Const. Art. V, § 7. Such an order, in our opinion, is contrary to the Eleventh Amendment. *In re Ayers,* supra, 123 U.S., at 505, 506, 88 S.Ct. 164; Rothstein v. Wyman, 467 F. 2d 226 (2nd Cir. 1972); Francis v. Davidson, 340 F.Supp. 351, 370 (D.Md. 1972, three-judge court), aff'd, 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972); Like v. Carter, 353 F.Supp. 405 (E.D.Mo.1973); contra Jordan v. Weaver, 472 F.2d 985 (7th Cir. 1973). See also Williams v. Dandridge, 297 F.Supp. 450 (D.Md.1968), rev'd. on other grounds, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491.

Appellees urge that the Supreme Court has decided this issue by affirming several decisions which ordered retroactive payments, although none of the cases in that court mentions one word about the Eleventh Amendment. Sterrett v. Moth-ers and Children's Rights Organization, 409 U.S. 809, 93 S.Ct. 68, 34 L.Ed.2d 70 (1972); State Dept. of Health and Rehabilitative Services v. Zarate, 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972); Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1969); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). We do not agree with the reasoning of the Seventh Circuit in *Jordan,* supra, that such cases require a holding that the Eleventh Amendment for some reason does not apply to this situation. We believe that the most that can be said for these cases is that the issue was not discussed. Accord *Rothstein,* supra. We also believe that plaintiffs' argument that such cases are pertinent to the Eleventh Amendment issues is without merit because, most recently, the Supreme Court, in *Employees,* etc., supra, which squarely dealt with the Eleventh Amendment, made no mention of those district court cases relied on in *Jordan.* We note also that the Supreme Court affirmed Francis v. Davidson, supra. *Francis* expressly noted that the Eleventh Amendment bars the type of relief sought herein. 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972).

Plaintiffs also urge that any protection which the Eleventh Amendment might provide has been waived by the State. Of course, the immunity of the Eleventh Amendment may be waived. Parden v. Terminal Ry. Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); see *Employees,* etc., supra. North Carolina has not, by any formal act, waived its immunity. Nor do any of the AFDC provisions condition federal funding upon a State's waiver of its immunity. It is argued that the mere participation by a State in the AFDC program constitutes at least an implied waiver of the protection of the Eleventh Amendment. We cannot agree. As pointed out by Mr. Justice Marshall, concurring in *Employees,* etc., supra, waiver of a constitutional protection is not to be inferred lightly. And, we do not think that mere participation in the AFDC pro-

gram constituted a waiver. *Rothstein,* supra; *Like,* supra. The petitioners, in *Employees,* etc., supra, were employees of State health facilities. They brought suit for overtime pay due them under § 16(b) of the Fair Labor Standards Act, and the district court dismissed the action on the basis of the immunity provided by the Eleventh Amendment. The Supreme Court affirmed the district court's dismissal of the action. The court turned first to Parden v. Terminal Ry. Co., supra. *Parden* involved a State owned railroad operating in interstate commerce, and the claims were those of employees under Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. In *Parden,* the court concluded that the broad definition of carrier under FELA included State owned railroads and that a State, by operating in interstate commerce, waived its immunity under the Eleventh Amendment. The court, in *Employees,* etc., concluded that a State was a covered employer under the Fair Labor Standards Act but that the *Parden* case did not control. *Parden* was distinguished on the grounds that it involved a State enterprise operated for profit in the congressionally controlled area of interstate commerce, where private persons and corporations normally operate. *Employees,* etc., on the other hand, was viewed as involving a State enterprise not operated for profit and thus not proprietary. The close connection with interstate commerce involved in *Parden* was found to be lacking in *Employees.* We believe that the distinction drawn in *Employees* should equally apply here. North Carolina's purpose in operating an AFDC program is purely humanitarian, not proprietary as was the railroad in *Parden.* We note also that while there has been a tremendous increase in involvement by the federal government in the area of public health and welfare, that area is still the primary domain of the State governments. In any event, the connection with interstate commerce, which was a sub-stantial factor in the outcome in *Parden,* is lacking here.

Of like effect is this court's decision in Chesapeake Bay Bridge and Tunnel District v. Lauritzen, 404 F.2d 1001 (4th Cir. 1968), in which the court reasoned that Virginia waived State sovereignty by seeking and obtaining admission into an exclusive federal realm, interstate and foreign commerce. Noting that the State had petitioned[2] for permission to occupy navigable waters with bridges and tunnels, the court stated:

> "Necessarily, the State recognized that she built in the Bay only by sufferance of the Federal government. This acknowledgment is conclusively evidenced by her petition for permission pursuant to the act of Congress, 33 U.S.C. § 401 et seq., to occupy navigable waters with bridges and tunnels. The supplication of the State, and her reception into the Federal domain, meant surrender, pro tanto and pro tempore, of State sovereignty and submission to the paramount overlordship of the United States during the tenancy." *Chesapeake Bay Bridge and Tunnel District,* at 1003.

*Parden,* supra, and *Chesapeake Bay Bridge and Tunnel District* involved entry into the federal realms of interstate and foreign commerce. In the instant case, as in *Employees,* etc., supra, we find no such involvement, proprietary or otherwise, into an exclusively federal realm. Accordingly, we are of opinion that there has been no waiver by North Carolina of its immunity from suit in this case.

On the whole case, we are of opinion the Eleventh Amendment, or the want of judicial authority of the United States under Article III of the Constitution, however it may be phrased, (Cf. Ex

---

2. Cf. Petty, Admx. v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

parte Young, 209 U.S. at p. 150, 28 S.Ct. 441, with *Duhne,* supra, and the concurring opinion in *Employees,* supra), prohibits this suit for retroactive AFDC payments.

The judgment of the district court is accordingly

Reversed.