Edwin R. MacKETHAN, Receiver of Norfolk Savings and Loan Corporation

v.

COMMONWEALTH OF VIRGINIA.

Civ. A. No. 73–547–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 16, 1974.

Oren R. Lewis, Jr., Arlington, Va., for plaintiff.

Andrew P. Miller, Atty. Gen. of Va., Henry M. Massie, Jr., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on the motion of the defendant, The Commonwealth of Virginia, to dismiss the complaint filed herein on the grounds of lack of jurisdiction by reason of the claimed sovereign immunity inherent in the State and preserved to it by the Eleventh Amendment to the Constitution of the United States.

Plaintiff, Edwin R. MacKethan, is the Receiver of the Norfolk Savings and Loan Corporation, having been so appointed by the Law and Chancery Court of the City of Norfolk, Virginia, in a suit there pending between the Commonwealth of Virginia at the relation of the State Corporation Commission of that State and the Norfolk Savings and Loan Corporation. As Receiver, plaintiff is the possessor of all claims of that corporation, its depositors, creditors and own-

1

**2**

ers, and seeks here a judgment for damages in the amount of eleven million dollars.

Plaintiff alleges generally that the defendant through agencies of its State Corporation Commission negligently and/or fraudulently breached its regulatory duties with respect to the activities of the now closed Norfolk Savings and Loan Corporation. Plaintiff alleges further that the Commonwealth's breach of its regulatory duties constitutes violation of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq.

Jurisdiction is sought to be invoked pursuant to 15 U.S.C.A. § 78aa.

On the material before it, the Court deems the matter ripe for disposition.

The allegations of the complaint and argument of the plaintiff give rise to the following:

The Norfolk Savings and Loan Corporation, whose principal place of business was Norfolk, Virginia, was prior to its closing by order of the State Court an uninsured financial institution established pursuant to the laws of Virginia.[1]

Plaintiff contends that the corporation solicited and sold through false and misleading representations made via the media, several million dollars of "Certificates of Investment."

Plaintiff's position is that the defendant, through its agencies and more specifically the Commission of Banking, perpetrated negligent and fraudulent acts in the course of its supervision which culminated in the insolvency of the corporation proximately resulting in substantial loss to holders of "Certificates of Investment" issued by the corpora-

tion. Indeed plaintiff alleges that "the Commonwealth and the Board of Directors conspired to prevent the public from realizing the insolvent condition" of the corporation.

It is these alleged acts of the defendant upon which plaintiff premises his claim under the Securities Act of 1933 and more specifically Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b).

While the Court has serious misgivings as to the correctness of plaintiff's contention reference a claim under either the Securities Act of 1933 or the Securities Exchange Act of 1934, the substantive issue need not be addressed by reason of the Court's conclusion, for reasons which follow, that the defendant's instant motion to dismiss is well taken.

The Eleventh Amendment to the Constitution of the United States, while silent on the issue of immunity reference suits against a state brought by one of its own citizens, has been interpreted by the Supreme Court as barring federal judicial authority to hear suits allegedly arising under the Constitution or laws of the United States brought both by citizens of another state and the state's own citizens, barring the state's consent. See Hans v. Louisiana, 134 U.S. 1, 10 S. Ct. 504, 33 L.Ed. 842 (1889); North Carolina v. Temple, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1889); In re State of New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Employees of the Department of Public Health and Welfare v. Department of Public Health and Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).[2] The Eleventh

---

1. Pursuant to Va.Code Section 6.1–227 et seq., Code of Virginia, 1950, as amended, the State Corporation Commission, an enforcement arm and agency of the Commonwealth is charged with the duty to supervise and regulate activities of savings and loan corporations for the protection of investors, depositors and others.

2. While the derivation of immunity is in any event academic, even absent the Eleventh Amendment, the exercise of federal judicial power may alternatively be barred by the

implied immunity from suit by a state's own citizens arising from the protective veil of sovereignty embodied in Article III, § 2 of the Constitution. See Mr. Justice Marshall's concurrence in Employees v. Missouri Public Health Dept., supra, 411 U.S. 279, 287, 93 S.Ct. 1614; Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Ex parte Young, 209 U.S. 123, 150, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Duhne v. State of New Jersey et al., 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920);

Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

That this immunity may be waived by explicit or implied consent is not open to question. See Parden v. Terminal R. Co. of Alabama, 377 U.S. 184, 189, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). There being nothing before the Court tending to establish an explicit consent by the defendant, the issue then is whether, as plaintiff contends, the actions of the State in regulating activities allegedly subject to congressional regulation left the sphere which was exclusively its own and in so doing has subjected itself to the congressional regulations as "fully as if it were a private person or corporation."[3]  Parden v. Terminal R. Co. of Alabama, *supra,* 377 U. S. 184, 84 S.Ct. 1207 (1964). Plaintiff in short contends that there has been an implied waiver of immunity on the part of the defendant state.

*Parden, supra,* is indeed the seminal case in this area. See also, Chesapeake Bay Bridge and Tunnel District v. Lauritzen, 404 F.2d 1001, 1003 (4th Cir. 1968). Nevertheless, assuming, arguendo, that the relevant activities of the Norfolk Savings and Loan Corporation were regulated by federal law, both *Parden,* and the *Chesapeake Bay Bridge* case are not only distinguishable on their facts, but the principles enunciated in *Parden* and followed by the Fourth Circuit in Chesapeake Bay Bridge fail to support plaintiff's theory of an implied waiver on the part of the defendant.

*Parden,* a case wherein the State of Alabama in the operation of a state owned railroad engaged in interstate commerce, for profit, was held to have waived its immunity against suit by its employees for actions arising under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq.  The Supreme Court there held that in operating a railroad, an activity usually dominated by private corporations and individuals, Alabama was engaged primarily in a "proprietary" as distinguished from a "governmental" function.  It was held, that Alabama, in performing services for profit, unlike our instant case, under statutory authority authorizing it to operate "as though it were an ordinary common carrier" waived sovereign immunity and hence was subject to suit under the federal act. The Supreme Court there, 377 U.S. at page 191, 84 S.Ct. at page 1212, went on to hold that "the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce."

Plaintiff here contends that the State of Virginia has become involved in securities regulations, an area legitimately subject to Congressional supervision, and is therefore subject to suit in a federal court on the same terms as any individual creating an injury in that area for which Congress intended to provide recovery.

The broad potential implications of *Parden,* including the effective waiver of immunity for any state action touching interstate commerce, were addressed and put in perspective more recently by the Supreme Court in Employees v. Missouri Public Health Dept., 411 U.S. 279, 93 S.Ct. 1614 (1973), a case not addressed in plaintiff's brief.  Granting congressional power to bring the states "to heel," whenever one injects itself into an area which Congress had legitimately seen fit to control, the Court

and Dawkins v. Craig, 483 F.2d 1191, 1193, n. 1 (4th Cir. 1973).

3. Plaintiff has cited several cases dealing with express waiver of sovereign immunity by the federal government in connection with the Federal Torts Claim Act, 28 U.S.C. § 2671 et seq. These cases, Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) and Ingham v. Eastern Air Lines, Inc., 373 F.2d 227 (2d Cir. 1967), are not relevant to the instant issue.

found that intent to exercise this power was not necessarily to be assumed.

It is not easy to infer that Congress in legislating pursuant to the Commerce Clause, which has grown to vast proportions in its applications, desired silently to deprive the States of an immunity they have long enjoyed under another part of the Constitution.

411 U.S. at 285, 93 S.Ct. at 1618. *Parden,* it found, dealt with "a rather isolated state activity," the entry of a state "for profit" into an aspect of commerce normally engaged in by private persons and corporations. Such proprietary state enterprises, it held, remained sufficient without more to waive sovereign immunity from suit under federal law. In *Parden,* the state had adopted the role of a private person and in such cases a congressional intent to achieve uniformity would be assumed.

But in *Employees,* the state had undertaken to run mental hospitals, cancer hospitals, and schools for delinquent girls. These were found to be traditionally governmental functions and within the normal sphere of state activity. No profit motive was found.

In deciding whether these institutions were brought under the Fair Labor Standards Act, the Court found appropriate more hesitancy in reaching the conclusion that operation of these facilities was congressionally intended to be conditioned on the forfeiture of immunity from suit in a federal forum. In the case of traditionally "governmental" activities, the Court declined to extend *Parden* "where the purpose of Congress to give force to the Supremacy Clause by lifting the sovereignty of the States and putting the States on the same footing as other employers is not clear", 411 U.S. at 287, 93 S.Ct. at 1619.

Plaintiff now attempts to extend the *Parden* doctrine into the area of pure governmental regulation. Such effort, in the Court's view, must fail. The impetus toward application of the *Employees* rationale is stronger here than in the case in which it was announced. While the operation of hospitals is not necessarily a governmental function, the specific nature of the hospitals involved in *Employees* gave state activity in that area a traditional base. In the present context, the state activity attacked is necessarily of a governmental nature. Regulation of securities is not an endeavor in which private persons are free to participate. If governmental ownership of non-profit mental hospitals is to be distinguished from government operation of a profit-making railroad, it is because the former is perceived more akin to those functions peculiarly reserved to and encumbent upon governments and closer to their essential purpose. Pure regulation of private conduct must be considered closer still. The "clear" congressional intent test announced in *Employees, supra,* must be applied here.

Plaintiff does not argue that Congress has expressed an intent to condition state regulation of securities on forfeiture of sovereign immunity. As heretofore discussed, state participation in the area of securities regulation is not sufficient in and of itself to waive immunity. *Cf.* Dawkins v. Craig, *supra,* 483 F.2d 1191 (4th Cir. 1973).[4]

As the Court has endeavored to point out, both *Parden* and *Chesapeake Bay Bridge* were cases involving state activities affecting strong federal interests in

---

4. Plaintiff's reliance on Chesapeake Bay Bridge and Tunnel District v. Lauritzen, 404 F.2d 1001 (4th Cir. 1968) is impersuasive. In that case Virginia, recognizing that she could do so only by sufferance of the Federal Government, had petitioned pursuant to the Act of Congress, 33 U.S.C. § 401 et seq., for permission to occupy navigable waters with bridges and tunnels.

"The supplication of the State, and her reception into the Federal domain, meant surrender, pro tanto and pro tempore, of State sovereignty and submission to the paramount overlordship of the United States during the tenancy."

404 F.2d at 1003. No such supplication or surrender is required for the state to enter the area of securities regulation. In this case the right of regulation inheres in the state, subject only to the affirmative limitations of Congress and the Constitution.

the area of commerce. While not unlike many matters daily engaged in, savings and loan enterprises undoubtedly peripherally and in some instances perhaps directly affect interstate commerce. Nevertheless, the relationship is not as apparent as in *Parden* and *Chesapeake Bay Bridge.* Indeed, unlike the instant case the immediate federal interests in those cases were exclusive. In *Parden,* the Federal Act had pre-empted state interests with respect to that type of employee compensation. See South Buffalo R. Co. v. Ahern, 344 U.S. 367, 371–372, 73 S.Ct. 340, 97 L.Ed. 395 (1952). In *Chesapeake Bay Bridge,* the federal interest by definition was exclusive. Furthermore, in each of those cases, the respective states, unlike our instant case, were indeed engaged in the precise activities which were subject to federal regulation.

Here the state was not involved in the activities of the Norfolk Savings and Loan Corporation, which were allegedly subject to federal regulation. At the most, the state's activity was limited to a regulatory system paralleling and complementing the federal regulatory scheme.

Nor can it be successfully contended that the state was engaged in even a flavorably proprietary function. Such function as the state engaged in was that of regulating business activity for the general welfare of its citizenry; a function patently not dominated by private persons or corporations, but one in which only a governmental agency is especially equipped to perform.

Plaintiff's reliance on the case of Jordan v. Weaver, 472 F.2d 985 (7th Cir. 1973), is, by reason of its conflict with the principles enunciated in Dawkins v. Craig, *supra,* 483 F.2d 1191 (4th Cir. 1973), the Court of Appeals by which this Court is bound, an act of legalistic futility, which could have been fruitful only if its principles had been adopted by the United States Court of Appeals for the Fourth Circuit or the Supreme Court of the United States. Additionally, the Court has considered the learned

opinion of the District Court for the Northern District of Illinois in the case of Tcheriprin v. Franz, No. 64–C–1285, (1973), a case factually paralleling the instant one, and concluded that same is in conflict with those authorities by which this Court is bound.

If, indeed, as expressed by the Court during argument of the pending motion, a state proximately causes injury for which federal law would, were the act performed by an individual, provide a remedy, the bar to suit presented by the doctrine of sovereign immunity may to some, and undoubtedly to the victim does, appear unjust.

Nevertheless, the doctrine is not newly conceived, and has had both constitutional and theoretical support for almost two centuries. The apparent hardships resulting from the adoption and retention of the doctrine's intended operation, as in the instant case, have long been subordinated.

The state not having waived, either implicitly, explicitly, or constructively, its immunity and not now consenting to be sued must prevail.

An appropriate order will issue.