**Eloise A. JACOBS, Plaintiff,**

v.

**COLLEGE OF WILLIAM AND MARY, an agency of the Commonwealth of Virginia, and Thomas A. Graves, Jr., President, College of William and Mary, and Mildred B. West, Head, Department of Physical Education for Women, College of William and Mary, Defendants.**

Civ. A. No. 79–133–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

July 29, 1980.

Robert M. White, White & Selkin, Norfolk, Va., for plaintiff.

Martin A. Donlan, Jr., Asst. Atty. Gen., Richmond, Va., for defendants.

## OPINION AND ORDER

CLARKE, District Judge.

The plaintiff is a former women's basketball coach and instructor at the College of William and Mary. The circumstances of her severance from that employment form the basis for this action against the College, its president, and the head of the College's Department of Physical Education for Women. Specifically, the plaintiff alleges in Count I of the Complaint that she was paid at a lower salary rate than male employees doing comparable work. Count II alleges that her contract was not renewed because of her age; and in Count III, she claims that the defendants violated her constitutional right to due process by failing to give her proper notice that her contract would not be renewed and by failing to continue her employment for the required period of time following delivery of this notice. These acts allegedly violate 42 U.S.C. §§ 1983 & 2000e *et seq.* and 29 U.S.C. §§ 201 *et seq.* & 626. Jurisdiction is founded on 28 U.S.C. §§ 1337 & 1343. The matter comes before the Court on the defendants' motion for summary judgment on Counts I and III of the Complaint.

In Count I of her Complaint, the plaintiff alleges that she was paid less than her counterparts in the men's athletic department, notwithstanding that she performed comparable work, in violation of 42 U.S.C. § 2000e–2(a)[1] and 29 U.S.C.

---

**1.** 42 U.S.C. § 2000e–2(a) provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his *compensation, terms, conditions, or privileges* of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any

way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

This provision is applicable to state universities, *see Shawer v. Indiana Univ. of Pa.,* 602 F.2d 1161 (3d Cir. 1979), and such institutions are not immunized from liability under this section by the Eleventh Amendment. *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

§ 206(d)(1).[2] The plaintiff, however, admits that she failed to file a charge of sex discrimination with the Equal Employment Opportunity Commission within 180 days of the termination of her employment or at any other time, as required by 42 U.S.C. § 2000e–5(e).[3] The timely filing of a charge with this agency is a jurisdictional prerequisite to any suit under 42 U.S.C. §§ 2000e, *et seq.* in federal district court. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1329 (4th Cir. 1976). Accordingly, insofar as this claim rests on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, this Court is without jurisdiction to grant the plaintiff any relief.

■ However, this does not dispose of the plaintiff's allegation of sex discrimination contained in Count I. The plaintiff also alleges that the defendants' actions violated Section 6(d)(1) of the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1), which prohibits sex discrimination in the payment of employees. This prohibition is enforceable against an agency of the State.[4] *See*

*Usery v. Charleston Co. Sch. Dist.*, 558 F.2d 1169 (4th Cir. 1977). *See also Arritt v. Grisell*, 567 F.2d 1267, 1270 (4th Cir. 1977). An employee aggrieved by the acts of an employer in violation of this section may bring a civil action pursuant to section 16(b) of the Act, 29 U.S.C. § 216(b), and such a claim clearly may be brought in conjunction with a claim under Title VII. *See Keyes v. Lenoir Rhyne College*, 552 F.2d 579 (4th Cir. 1977), *cert. denied*, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Hodgin v. Jefferson*, 447 F.Supp. 804 (D.Md.1978). Nothing in the present record requires the dismissal of this claim. The defendants' request for summary judgment on Count I is therefore GRANTED insofar as this Court rests on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and DENIED as to the plaintiff's claim under section 6(d)(1) of the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1).

In Count III of her Complaint, the plaintiff alleges that under College regulations she was entitled to notice of the decision not to renew her contract at least twelve months before the expiration of her appointment. She alleges that the College and the other defendants failed to give her notice as required by these regulations and

---

**2.** 29 U.S.C. § 206(d)(1) provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

**3.** This section states, in pertinent part:

A charge under this section shall be filed within one hundred and eighty days after the

alleged unlawful employment practice occurred . . . .

**4.** It also appears clear that the State is not immune pursuant to the Eleventh Amendment from a suit by a private citizen-employee under this Act. In *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the Supreme Court ruled that private suits by state employees were barred by the Eleventh Amendment. Although Congress had included state employees within the coverage of the Act, the Court found no authorization in section 16(b) of the Act for suits against the states or public agencies by their employees. However, section 16(b) was amended in 1974 to overcome this omission. This section now specifically authorizes any employee to bring "[a]n action to recover liability . . . against any employer (*including a public agency*) in any federal or state court of competent jurisdiction . . . ." 29 U.S.C. § 216(b) (emphasis supplied). This specific authorization is sufficient to overcome the state's Eleventh Amendment immunity. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

that she received notice of her non-retention only three months before her employment was terminated. This omission, she concludes, was inconsistent with her constitutional right to due process, and in violation of 42 U.S.C. § 1983.[5]

The threshold issue we are asked to decide by the defendants' motion is whether these alleged facts state a claim for relief under § 1983 for a deprivation of the plaintiff's constitutional rights. We conclude that they do.

■ At the time her employment at the College was terminated in June 1978, the plaintiff was a non-tenured, part-time instructor and coach in the College's Department of Physical Education for Women. She had been employed in that Department since 1974. At all times her employment was designated as a "temporary, restricted appointment" under the terms of a one-year contract which was renewed each year. Throughout the period 1974 to 1978, the plaintiff was paid as a part-time employee, except for a short period between September and December 1976, when she was paid as a full-time employee. The plaintiff has acknowledged that she was not a tenured employee and was not eligible for tenure.

Under these circumstances it is clear that the plaintiff had no right to notice and a hearing arising from the Constitution itself. Standing alone, her tentative and restricted employee did not amount to a "property" interest in continued employment sufficient to trigger these constitutional protections. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). However, the plaintiff does not rely exclusively upon the nature of her employment to establish that she was entitled to twelve months' notice of her non-retention. She finds this requirement in the College's Faculty Handbook, Section 3 of which states:

Written notice that a probationary appointment is not to be renewed will be given to the faculty member in advance of his or her appointment, as follows:

. . . . .

(c) At least twelve months before the expiration of an appointment after two or more years at the College.

■ Although the defendants argue that this section, and the remainder of the Handbook, applies only to full-time faculty members, nothing in the portion of the Handbook provided to the Court compels this conclusion. Whether the plaintiff's job fell within the class of positions covered by the Handbook, especially Section 3 thereof, is a factual matter which must be resolved at trial and not by means of summary judgment. For purposes of this motion, the Court must assume the truth of the plaintiff's allegations that the Handbook, including Section 3, was promulgated by the College for the benefit of the class of employees to which she belonged, and that this Handbook reflected official College policy.

Given these assumptions, and the uncontested fact that the plaintiff was employed at the College for more than two years, it follows that she was entitled to written notice of the non-renewal of her contract at least twelve months before the expiration of her appointment. Stated another way, she was entitled to continue her employment for twelve months after receiving notice of her non-retention. As a result of the defendants' failure to give her adequate notice, the plaintiff lost not only income for a substantial period, but also an opportunity assured by the College's regulations to continue in active employment while she sought out other career opportunities. It may be possible to characterize these benefits as an expectancy amounting to a "property" interest in continued employment, al-

5. This section provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

beit for a limited period, established by the College's own rules. *Cf. Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann, supra; Sigmon v. Poe,* 564 F.2d 1093 (4th Cir. 1977). Regardless of how the plaintiff's interest is characterized, however, it is not clear that the plaintiff has not been prejudiced by the defendants' alleged failure to follow the College's own rules. Having established procedures to be used when an untenured employee is not reappointed, the College was bound to follow these procedures. *See Mabey v. Reagan,* 537 F.2d 1036, 1042 (9th Cir. 1976), *citing, Yellin v. United States,* 374 U.S. 109, 121, 83 S.Ct. 1828, 1835, 10 L.Ed.2d 778 (1963); *Vitarelli v. Seaton,* 359 U.S. 535, 545, 79 S.Ct. 968, 975, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). This is but a species of the more general rule that the "Due Process Clause is implicated [where] an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres,* 440 U.S. 741, 752–53, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733 (1979). The plaintiff alleges that the College failed to follow its own rules laid down for her benefit, upon which she reasonably relied to her prejudice. In accordance with the foregoing principles, these allegations constitute a sufficient claim for relief under § 1983.

██ In support of their motion for summary judgment, the defendants also urge that the College, and the other named defendants, insofar as they are sued in their official capacities,[6] are immune from suit under § 1983. This position is well-founded. The Eleventh Amendment[7] bars any suit by private parties seeking to impose a liability which must be paid from public property or funds unless the State has consented to the filing of such a suit. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Although this immunity may in some instances be overcome by legislation enacted by Congress under the Fourteenth Amendment *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Title VII), legislation has this effect only if Congress explicitly so intended. *Quern v. Jordan, supra.* The Supreme Court has determined that § 1983 was not intended to abrogate the states' Eleventh Amendment immunity, and that no liability may be imposed upon an unconsenting state in an action brought under that section. *Quern v. Jordan, supra; Edelman v. Jordan, supra.* The immunity conferred by this Amendment extends not only to suits brought against the State itself, but also to those brought against its officers, agents and representatives where the state, though not named, is the real party in interest and will be affected by any judgment. *See Alabama v. Pugh, supra; Edelman v. Jordan, supra,* 415 U.S. at 663, 94 S.Ct. at 1355; *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65

---

**6.** The Complaint does not clearly state whether President Graves and Mildred West are named as defendants in their official capacities or in their personal capacities. However, the Complaint names these defendants with reference to their official titles, and broadly alleges that they personally participated in the acts or omissions of which the plaintiff complains. The Supreme Court's decision in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, teaches that allegations against state officials should be liberally construed in favor of the plaintiff. *See Ahmad v. Burke,* 436 F.Supp. 1307, 1311–12 (E.D.Pa.1977). Viewed in this light, it appears that the plaintiff seeks judgments against these individuals both personally and in their official capacities. *See id.*

**7.** The Eleventh Amendment states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Although the Amendment by its terms does not bar suits against a state by its own citizens, the Supreme Court has consistently interpreted it to have that effect. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Dawkins v. Craig,* 483 F.2d 1191, 1193 (4th Cir. 1973), *cert. denied,* 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974).

S.Ct. 347, 350, 89 L.Ed. 389 (1945); *In re State of New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); *Dawkins v. Craig*, 483 F.2d 1191, 1194 (4th Cir. 1973), *cert. denied*, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974); *O'Neill v. Early*, 208 F.2d 286 (4th Cir. 1953).

■ A threshold question which must be determined is whether the College constitutes an "arm of the State partaking of the State's Eleventh Amendment immunity. . . ." *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The answer to this inquiry lies, in part, in examining the nature of the entity created by State law, *id.*, and in determining whether the entity thus created has power sufficiently distinct and independent from the State as not to be considered merely a part of the State or merely its "alter ego." *See Ahmad v. Burke*, 436 F.Supp. 1307, 1310 (E.D.Pa. 1977). Although a number of state colleges and universities have been held to enjoy the protection afforded by the Eleventh Amendment, *see, e. g., Perez v. Rodriguez Bou*, 575 F.2d 21 (1st Cir. 1978) (University of Puerto Rico); *Brennan v. University of Kansas*, 451 F.2d 1287, 1290 (10th Cir. 1971); *Williams v. Eaton*, 443 F.2d 422, 427–28 (10th Cir. 1971) (University of Wyoming); *Walstad v. University of Minnesota Hosps.*, 442 F.2d 634, 641–42 (8th Cir. 1971); *Board of Trustees of Arkansas A & M College v. Davis*, 396 F.2d 730 (8th Cir.), *cert. denied*, 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968); *Hamilton Mfg. Co. v. Trustees of State Colleges in Colorado*, 356 F.2d 599 (10th Cir. 1966); *Scott v. Board of Supervisors of Louisiana State University*, 336 F.2d 557 (5th Cir. 1964); *Board of Regents of University of Nebraska v. Dawes*, 370 F.Supp. 1190 (D.Neb.1974),[8] the status of each state university must be considered on the basis of its own peculiar circumstances. *Soni v. Board of Trustees*, 513 F.2d 347, 352 (6th Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976).

In arriving at an answer to this question, courts have considered a number of factors: whether and to what extent any judgment will be payable from the state treasury; the extent of funding provided to the institution by the state; the extent of the state's control in appointing the governing body of the institution; the degree of the institution's autonomy over its operations; whether the institution is separately incorporated; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation; and whether the institution's function is governmental or proprietary. *See Perez v. Rodriguez Bou, supra*, and other cases cited above. *See also Roberson v. Dale*, 464 F.Supp. 680, 686–87 (M.D.N.C.1979) (reciting factors to be considered in determining whether a state university constituted the state's "alter ego" for purposes of diversity of citizenship under 28 U.S.C. § 1332 and under the Eleventh Amendment); *Moreno v. University of Maryland*, 420 F.Supp. 541, 549 (D.Md.1976), *aff'd sub nom., Moreno v. Elkins*, 556 F.2d 573 (4th Cir. 1977), *vacated on other grounds, Toll v. Moreno*, 441 U.S. 458, 99 S.Ct. 2044, 60 L.Ed.2d 354 (1979).

■ The College of William and Mary, from its inception, has been a public and not a private foundation. *See Bracken v. William and Mary College*, 5 Va. (1 Call) 161 (1797). Although its charter originated with the blessing of the English monarchs from whom it takes its name, the Board of Visitors of the College has since been incorporated as a Virginia corporation by statute. Va.Code § 23–39. The College serves a governmental purpose: the education of the State's citizens and others. All real and personal property relating to the College is, by statute, the property of the Commonwealth of Virginia. Va.Code § 23–40. Accordingly, any judgment against the College must be satisfied out of State property. The members of the Board of Visitors, the governing body, are appointed by the Governor, who is permitted broad discretion in naming such members. *See* Va.Code

---

**8.** *But see Goss v. San Jacinto Junior College*, 588 F.2d 96 (5th Cir. 1979), holding that the Junior College was not an "arm of the state" in view of Texas law.

§§ 23–41 & 23–42. Funding for the College is supplied by the State, though the Board of Visitors is empowered to direct its application. *See, e. g.,* Va.Code §§ 23–9.9 and 23–49.1(c). The Board of Visitors is required to file an annual report with the office of the Superintendent of Public Instruction and State Council of Higher Education. Va.Code § 23–1. These factors lead the Court to conclude that the College constitutes an "arm of the state," partaking of the State's Eleventh Amendment immunity, and that the State is the "real party in interest" insofar as the College may be held liable.

 Having determined this, the next question is whether the State has waived this immunity, permitting suits against the College under § 1983. We conclude that it has not. Although section 8.01–192 of the Code of Virginia [9] (formerly section 8–752) permits certain claims to be brought against the Commonwealth, this statute specifically provides that such claims must be brought in "an appropriate circuit court for redress." A state's waiver of immunity in its own courts, however, does not necessarily operate as a consent to be sued in federal court as well. *See Kennecott Copper Corp. v. Tax Comm'n,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); *Medicenters of America, Inc. v. Virginia,* 373 F.Supp. 305, 307 (E.D.Va.1974). A waiver of the State's Eleventh Amendment immunity effective as to actions brought in federal court must result from a clear legislative intent to accomplish that end. No such clear intent underlies § 8.01–192, nor can this Court find any other indication that the Commonwealth of Virginia, or the College, has consented to be sued in federal court. *See Edelman v. Jordan, supra,* 415 U.S. at 673–74, 94 S.Ct. at 1360–61; *Medicenters of America, Inc. v. Virginia, supra.*

We conclude that the College, as an agency of the State, is immune from any liability arising from the facts alleged in Count III, whether in the form of damages, or any retroactive injunctive relief such as reinstatement. *Alabama v. Pugh, supra; Edelman v. Jordan, supra.* Nor can the Court conceive of any appropriate injunctive relief which would have merely an "ancillary" effect upon the State or College, which could be awarded against this defendant in

---

**9.** Va.Code § 8.01–192 provides:

When the Comptroller or other authorized person shall disallow, either in whole or in part, any such claim against the Commonwealth as is provided for by §§ 2.1–223.1, 2.1–223.3 or 8.01–605 at which time a right of action under this section shall be deemed to accrue, the person presenting such claim may petition an appropriate circuit court for redress.

Sections 2.1–223.1, 2.1–223.3 and 8.01–605, cited therein, provide:

§ 2.1–223.1. To whom claims to be presented.—Any person having any pecuniary claim against the Commonwealth upon any legal ground shall present the same to the head of the department, division, institution or agency of the Commonwealth responsible for the alleged act or omission which, if proved, gives rise to such claim; provided, however, that whenever the claimant cannot identify such alleged act or omission with any single department, division, institution or agency of the Commonwealth, then the claim shall be presented to the Comptroller.

§ 2.1–223.3. Claims to be examined and forwarded to Comptroller; what Comptroller may allow.—Every claim authorized to be presented to the Comptroller or to the head of a department, division, institution or agency shall be examined by the person to whom it is presented and forwarded with appropriate supporting papers and recommendations without unreasonable delay to the Comptroller, who shall promptly allow so much on account thereof as may appear to be due.

§ 8.01–605. How person entitled to money paid into State treasury may recover it.— Money paid into the State treasury under the provisions of this article shall be paid to any person entitled thereto, who has not asserted a claim to the same in the suit or proceeding in which it was held as aforesaid, upon satisfactory proof that he is so entitled. Such claim shall be presented to the Comptroller and may be allowed by him upon satisfactory proof. If such claim be disallowed, the claimant may proceed for its recovery in an appropriate circuit court in the manner provided in §§ 8.01–192 through 8.01–195. If, in such proceeding, the claim be established, the net amount thereof, after deducting costs and other proper charges, shall be paid to the claimant out of the treasury on the warrant of the Comptroller. No limitations shall bar any claim presented or asserted under this section.

this case.[10] *See Hutto v. Finney*, 437 U.S. 678, 690, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522; *Edelman v. Jordan, supra*, 415 U.S. at 668, 94 S.Ct. at 1358. Accordingly, the College is DISMISSED as a defendant to Count III of the Complaint. For the same reasons the individual defendants are immune from liability under this Count insofar as they have been sued in their official capacities, *Edelman, supra; Ford Motor Co. v. Department of Treasury*, 323 U.S. at 462–64, 65 S.Ct. at 349–50, although they may be liable personally for their alleged misconduct and therefore should remain as defendants. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jervey v. Martin*, 336 F.Supp. 1350, 1354 (W.D.Va.1972).

Having determined that the College is immune from any relief which might appropriately be granted in this action, we need not reach the more troublesome question whether the College, as a State agency, is a "person" within the meaning of § 1983, a question which has been clouded by a number of recent decisions by the Supreme Court. *See Quern v. Jordan, supra* (especially the concurring opinion of Justice Brennan); *Lake Country Estates v. Tahoe Planning Agcy.*, 440 U.S. 391, 398–400, 99 S.Ct. 1171, 1175–1177, 59 L.Ed.2d 401 (1979); *Alabama v. Pugh, supra; Hutto v. Finney, supra*, 437 U.S. at 700–710, 98 S.Ct. at 2579–2584 (concurring opinion of Brennan, J., and concurring and dissenting opinion of Powell, J.); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan, supra*. However, it appears to this Court that the Supreme Court's decision in *Quern v. Jordan, supra*, effectively forecloses application of § 1983 to states and their agencies.

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED as to that part of Count I which rests upon Title VII, 42 U.S.C. § 2000e *et seq.*, and as to Count III insofar as it alleges any claim against the College or the other named defendants in their official capacities. However, the College remains a defendant to Counts I and II, and the individual defendants remain defendants to Counts I and II in all capacities, and to Count III in their personal capacities.

---

**10.** Again, the Complaint is unclear as to the precise relief requested. In her demand for judgment in Count III, the plaintiff requests "back wages, liquidated damages, court costs, attorney's fees, and such other and further relief as to the Court may seem proper . . . ." Although no specific request for reinstatement or other injunctive relief is included, it may be that the plaintiff's request for "further relief" is sufficiently broad to include such relief if warranted.