816 F.2d 673
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David W. SMITH, III, Plaintiff-Appellant,
v.
James G. MARTIN, in his capacity as Governor of the State of
North Carolina; Lacy H. Thornburg, in his capacity as
Attorney General of the State of North Carolina; Franklin
E. Freeman, in his capacity as Director of the
Administrative Office of the Courts of the State of North
Carolina; Timothy L. Patti; Robert W. Clark; William J.
Allran III, Defendants-Appellees.
 No. 86-2134.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1987.
Decided April 2, 1987.
 
 Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 Robert N. Hunter, Jr. (Hunter, Hodgman, Greene, Donaldson, Cooke & Elam, on brief), for appellant.
 Isham Barney Hudson, Jr., Special Deputy Attorney General (Lacy H. Thornburg, Attorney General; Jean A. Benoy, Senior Deputy Attorney General, on brief), for appellees.
 PER CURIAM:
 
 
 1
 This case turns on the proper interpretation and application of certain laws of the State of North Carolina relating to the filling of unexpired terms of judicial officers.
 
 
 2
 The factual basis for the controversy is relatively briefly stated. In December 1985, Judge Ramseur resigned as District Court Judge of the Twenty-seventh Judicial District, effective December 31, 1985. Thereafter, the president of the Twenty-seventh Judicial District convened a meeting of the members of that district bar for the purpose of nominating candidates for appointment to fill the vacancy.
 
 
 3
 Judge Ramseur had been elected to the office of District Judge as the nominee of the Democratic Party, and the plaintiff is a licensed attorney who has registered as a Republican. The Twenty-seventh Judicial Circuit Bar nominated three persons, all members of the Democratic Party, whose names were to be submitted to the Governor of the State of North Carolina, who, pursuant to the constitutional and statutory authority vested in that office, would make the appointment from these three nominees to fill the remaining portion of the term to which Judge Ramseur had initially been elected.
 
 
 4
 Article IV, Sec. 10, of the Constitution of North Carolina (hereinafter North Carolina Constitution) provides in part that, "Vacancies in the office of District Judge shall be filled for the unexpired term in a manner prescribed by law."
 
 
 5
 Another pertinent provision of the North Carolina Constitution is Article VI, Sec. 6, which provides in part that, "Every qualified voter in North Carolina who is 21 years of age, except as in this Constitution disqualified, shall be eligible for election by the people to office."
 
 
 6
 It is important to note that this provision of the Constitution relates to "election by the people to office." This section, on which the plaintiff below relies so heavily, does not modify the language first quoted from the Constitution, to the effect that vacancies in the office of District Judge shall be filled for the unexpired term in a manner prescribed by law.
 
 
 7
 Pursuant to the grant of authority in Article IV, Sec. 10, of the North Carolina Constitution to adopt appropriate statutes, North Carolina has adopted North Carolina General Statute Sec. 7A-142, reading as follows:
 
 
 8
 A vacancy in the office of district judge shall be filled for the unexpired term by appointment by the Governor from nominations submitted by the bar of the judicial district. If the district court judge was elected as the nominee of a political party, then the district bar shall submit to the Governor the names of three persons who are residents of the district who are duly authorized to practice law in the district and who are members of the same political party as the vacating judge; provided that if there are not three persons who are available, the bar shall submit the names of two persons who meet the qualifications of this sentence. Within 60 days after the district bar submits nominations for a vacancy, the Governor shall appoint to fill the vacancy. If the district bar fails to submit nominations within 30 days from the date the vacancy occurs, the Governor may fill the vacancy without waiting for nominations.
 
 
 9
 Under the authority of this statute, enacted pursuant to the Constitution of North Carolina, Art. IV, Sec. 10, the district bar submitted three names of persons of the same party as the vacating judge, so that the Governor might make his appointment of one of those three.
 
 
 10
 On this factual background, the plaintiff asserts, first, that as a registered voter and licensed attorney, he possesses a liberty or property interest in being eligible for the remainder of the term of this office in North Carolina, second, that the defendants deprived the plaintiff of his state-created right to be eligible for office without equal protection or due process of law, and, third, that the defendants deprived the plaintiff of his constitutional rights to free speech and freedom of association without equal protection or due process of the law.
 
 
 11
 As to the first two stated issues, this court can find no basis for saying that anything in the North Carolina statutes deprives the plaintiff of liberty or property interests in being eligible for office in North Carolina, nor can it find that the defendants, under this statutory pattern, have deprived the plaintiff of his state-created right to be eligible for office without due process and without equal protection. The provisions of the constitution and the laws of the State of North Carolina on which the plaintiff relies establish, in fact, eligibility for election to office, and do not deal with the question of filling vacancies in judicial office. Article IV, Sec. 10, and the accompanying statutory provisions relate solely to the question of filling vacancies in the district court.
 
 
 12
 The provisions relating to filling such a vacancy are clearly supported by the state's interest in maintaining the will of the people as reflected in the general election vote which brought the vacating judge to the bench in the first place. If we assume, as we do, that under North Carolina's system, the electorate is willing to choose a member of a particular party to fill the judicial office, then it is appropriate for the General Assembly to see that the will of the electorate is carried forward in replacing the judicial officer who steps down before fulfilling the term of office to which that officer has been elected.
 
 
 13
 The deprivation of due process argument is further advanced by the plaintiff on the theory he has acquired a property right by virtue of Article IV, Sec. 22, of the North Carolina Constitution which provides that, "Only persons duly authorized to practice law in the courts of this State shall be eligible for appointment as a ... Judge of District Court." From this, the plaintiff reasons that making nonlawyers ineligible must also mean that all lawyers are eligible for appointment and from this, the plaintiff derives the thought that he has property right in that eligibility.
 
 
 14
 As indicated by the court below, this is a non sequitur, in light of the fact that the Constitution of North Carolina gives no individual lawyer a property right to interim appointment to the district court. Contrary to that assertion, Article IV, Sec. 10, quoted previously, indicates that such vacancies shall be filled for the unexpired term in a manner prescribed by law, and the General Assembly has thus prescribed a method for filling the unexpired term.
 
 
 15
 Certainly, there is ample constitutional authority for the General Assembly of the State of North Carolina to prescribe the methodology by which a replacement for a vacating judge should take place, and the General Assembly of North Carolina has done so in this case on a basis which is defensible, assuming that judicial offices are initially to be filled by election by the qualified electors of the district to be served by that officer.
 
 
 16
 Turning to the third issue raised by the plaintiff, namely, deprivation of freedom of speech and freedom of association without due process of law, this court finds the argument equally without merit. The provisions of the Constitution heretofore cited apply equally to all persons within the confines of North Carolina, and they provide a process of law by which the actions now challenged are to be undertaken. In light of the pertinent constitutional provisions, there can be no argument that the authority of the General Assembly was somehow overstepped in adopting the statute prescribing the manner in which the interim replacement is to be selected and, so far as the record discloses, that process was duly carried forward by the bar association and presumably by the Governor in selecting the replacement for Judge Ramseur.
 
 
 17
 The court below dismissed consideration of the plaintiff's claims of violation of the state constitution under the Eleventh Amendment, finding that that Amendment barred the court from consideration of the state constitutional claims. See Mayberry v. Dees, 663 F.2d 502, 505 (4th Cir.1981), cert. denied, 459 U.S. 830 (1982); Dawkins v. Craig, 483 F.2d 1191, 1194-95 (4th Cir.1973). The court below discussed at some length the case of Rodriguez v. Popular Democratic Party, 457 U.S. 1 (1982). In Rodriguez, the Puerto Rico statutes gave the political party of a deceased representative in the House of Representatives of the Puerto Rico legislature the right to appoint an interim successor for the deceased representative. In Rodriguez, after the death of a representative, the party held a primary election in which only its members voted and from that vote, they selected a winner who was sworn in as the new representative.
 
 
 18
 The Supreme Court held that the Puerto Rico legislature could properly and lawfully select a procedure for filling interim vacancies, which procedure was calculated to perpetuate the recorded party preference of the voters, assuring that the party preference was maintained by the system which they devised, rather than having the vacancy filled by some other official who might very well be a member of a different party and who would perhaps favor a member of his party as opposed to the party of the deceased representative.
 
 
 19
 Applying the rationale of Rodriguez to the facts in this case, it is apparent that the constitutional and statutory scheme in North Carolina for filling the unexpired term of office of a judicial officer comports well with the concept of maintaining for that unexpired portion of the term the party preference shown by the voters in the election itself.
 
 
 20
 For the reasons stated, and on the strength of the detailed opinion below, the action of the United States District Court is
 
 
 21
 AFFIRMED.